The **PORT OF PORTLAND**, a municipal corporation, Plaintiff-Appellee,

v.

**AN ISLAND IN the COLUMBIA RIVER** et al., Defendants-Appellants.

No. 71–2482.

United States Court of Appeals, Ninth Circuit.

May 25, 1973.

Rehearing Denied June 19, 1973.

**550**

See also D.C., 315 F.Supp. 1160.

Alfred A. Hampson, of Williams, Montague, Stark, Hiefield & Norville, Portland, Or., for defendants-appellants.

Slade Gorton, Atty. Gen., Theodore O. Torve, Asst. Atty. Gen., Olympia, Or., Robert L. Myers, of Shuler, Rankin, Myers, Walsh & Ragen, Duane Vergeer, of Vergeer, Samuels, Roehr & Sweek, Portland, Or., for plaintiff-appellee.

Before CHAMBERS, ELY and WRIGHT, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

Sand Island, in the Columbia River, was the object of an action to quiet title which gave rise to this appeal. An Interstate Compact in 1958 between Washington and Oregon placed it within the latter state. We are concerned with its status before that date.

The district court held that the island was within the State of Oregon at all times in question. We find the district court applied the wrong legal standard

and we must reverse and remand for a new trial.

Sand Island emerged in the Columbia River as the result of alluvial deposits which first appeared on charts as sand bars and shoal water after both Oregon and Washington had been admitted to the Union. The island even now is not entirely stationary, but has remained in its general location for many years.

The plaintiff, a municipal corporation of the State of Oregon, claims title to the island under a 1970 deed from the State of Oregon. The defendant-appellants claim title under a 1929 deed from the State of Washington. If that instrument was effective to convey the island to the appellants' predecessor-in-interest, then the Port of Portland was not entitled to a decree quieting title in its favor. If the State of Washington owned Sand Island in 1929, it is conceded that its deed at that time was effective.

The boundary of the State of Oregon was established by the Oregon Admission Act of 1859, 11 Stat. 383.[1] The Act describes the boundary as follows:

"Beginning one marine league at sea due west from the point where the forty-second parallel of north latitude intersects the same; thence northerly, at the same distance from the line of the coast, lying west and opposite the State, including all islands within the jurisdiction of the United States to a point due west and opposite the middle of the north ship channel of the Columbia River; *thence easterly, to and up the middle channel of said river, and, where it is divided by islands, up the middle of the widest channel there-of,* to a point near Fort Walla-Walla. . . ." (Emphasis supplied.)

The italicized part of the boundary definition applies here. The district court concluded that the 1929 boundary between Washington and Oregon was the middle of the channel of the Columbia running north of Sand Island because the *river* was divided by an island and the *widest* channel of the river was to the north of Sand Island.

The appellants contend that the district court misread the statutory boundary definition and they urge that the "widest channel test" applies only when the "main channel"[2] is divided by one or more islands. The lower court made no finding either that the main channel was divided by Sand Island or that the main channel in 1929 ran north of Sand Island. For that reason appellants urge that the judgment must be reversed.

 As we have noted, we agree that the judgment cannot stand. Our reasons are quite apart from the resolution of the issue presented by the parties on the proper antecedent of the word "thereof" in the boundary definition. In our view the lower court erred in applying the "widest channel test" because Congress did not intend that islands such as Sand Island, formed after the admission of Oregon to the Union, should be considered in fixing the Oregon-Washington boundary.

The location and ownership of islands formed after 1859, read in connection with the boundary definition, present questions which apparently have not previously been presented to any court. Neither the "plain language" of the Ad-

---

1. When Washington was admitted to the Union in 1889 the same language (with one minor modification not relevant here) was used to define its boundary along the Columbia River, 25 Stat. 676. In any event the language of the Washington Admission Act cannot affect Oregon's rights for
 "[t]he northern boundary of the state of Oregon was established prior to that of the state of Washington, and it is not within the power of the national government to change that boundary without the consent of Oregon." Washington v. Oregon, 211 U.S. 127, 130–131, 29 S.Ct. 47, 53 L.Ed. 118 (1908).

2. Though the Act speaks of the "middle channel" the Supreme Court held in Washington v. Oregon, 214 U.S. 205, 216, 29 S.Ct. 631, 53 L.Ed. 969 (1909) that the language should properly be construed as "the middle of the main channel."

mission Act, nor the legislative history thereof, gives one much guidance in resolving this issue. But in our opinion the relative neutrality of the language chosen and the paucity of legislative history on or near the point are factors which indicate that no dramatic deviation from the common law was intended.

Islands in rivers are generally formed in two ways:

"by accretions produced by the deposit at a particular place of the soil and sand constantly floating in it, and by the river cutting a new channel through the mainland on one or the other of its shores." Missouri v. Kentucky, 11 Wall. (78 U.S.) 395, 407, 20 L.Ed. 116 (1870).

■ If the island is formed in the second way, by avulsion, the common law is well settled that, if the boundary between two states (or private property owners) is the river, the boundary remains the old channel and the island would belong to the owner of the mainland to which it was previously attached. Nebraska v. Iowa, 143 U.S. 359, 12 S.Ct. 396, 36 L.Ed. 186 (1892); Missouri v. Nebraska, 196 U.S. 23, 25 S.Ct. 155, 49 L.Ed. 372 (1904); Missouri v. Kentucky, *supra*.

■ If the island is formed by gradual deposits in midstream, it is equally well settled under the common law that the island belongs to the owner of the river bed in the place where the island arose. If the river is the boundary between two states the island would belong to the state on whose side of the middle of the main channel it was formed. St. Louis v. Rutz, 138 U.S. 226, 11 S.Ct. 337, 34 L.Ed. 941 (1891); Jones v. Soulard, 24 How. (65 U.S.) 41, 16 L.Ed. 604 (1860); 5A Thompson on Real Property § 2564 at 620 (1957 ed.).

Were after-formed islands to bring the widest channel test into play both of the above common law results would be altered. If a new island were formed by avulsion and the new channel were wider than the old one (as it generally would be) then, by application of the statutory boundary definition including the after-formed island, the new land would suddenly be part of the state which owned the opposite bank of the old channel.

Likewise, if a new island were formed by deposits in the river bed (as Sand Island evidently was), the boundary would be the wider channel on either side of the island, irrespective of where, in relation to the middle of the main channel, the island was formed. Moreover, if the island continued to grow on both sides by accretion, the boundary could well shift back and forth as first one channel and then the other momentarily became the "widest channel"!

■ We perceive no good reason for concluding that Congress intended by the Oregon Admission Act to achieve results so far removed from what had theretofore been settled law. Consequently, we hold that islands such as Sand Island, formed subsequently to 1859, are not to be considered in determining the Oregon boundary prior to the 1958 compact. The boundary remains what it was in 1859, the varying center of the main channel subject to such modifications as have been made by compact, which, as against defendants, cannot be made retroactive as to their property interests.

While one could well infer from the evidence presented that the main channel has always been south of Sand Island, the trial court made no finding on this point. Because the case was apparently tried by the parties on the wrong theory we think the best resolution is for this court to order a new trial so that new evidence can be taken and new findings made.

Reversed and a new trial ordered.